### In the Matter of William P. YOUNG and Gary Alan Martens, Debtors.

### Bankruptcy Nos. 81–1675, 81–1697.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 26, 1983.

---

William P. Young, David W. Steen, Tampa, Fla., Gary E. Frazier, St. Petersburg, Fla., L. Geoffrey Young, St. Petersburg, Fla., Chris C. Larimore, Bradenton, Fla.

## ORDER ON OBJECTION TO CLAIM NO. 1 OF JOSEPH GRANDE

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for consideration upon the Trustee's Objection to Claim No. 1 of Joseph Grande, filed by Chris Larimore, the Trustee in the above-styled Chapter 13 cases. The Trustee objects to Joseph Grande's claim for $12,981.13 based on the fact that while Mr. Grande claims to be a secured creditor, the security agreement executed by the Debtors, William P. Young and Gary Alan Martens, which purportedly grants to Mr. Grande a security interest in business inventory, fails to include inventory as part of the listed collateral. In addition to the omission of inventory in the security agreement, the Trustee contends that the Claimant's lien was not properly perfected. The question of proper perfection was resolved at the hearing and, therefore, is not addressed in this Order.

The Court having heard argument of counsel and being otherwise duly advised in the premises finds the following undisputed facts:

On October 8, 1979, William P. Young and Gary Alan Martens, as partners, executed a promissory note in the principal amount of $16,881.95 in favor of Joseph Grande as consideration for the purchase of a hardware business known as M & Y Hardware, 6101 54th Avenue North, St. Petersburg, Florida. To secure the obligation the Debtors also executed a security agreement in which they granted a security interest in certain collateral. The security agreement provides that the Debtors grant a security interest in:

> (a) The property described in the schedule herein (hereinafter called the collateral) which collateral the Debtor represents will be used primarily in business or other use.

The agreement also grants a security interest in all after-acquired property of the same class (as that scheduled) all proceeds, if any, and all increases, substitutes, replacements, additions and accessions. The schedule of collateral attached to the security agreement is entitled "Equipment Inventory" and includes only items valued at $2,500 which would be readily recognized as equipment, i.e. cash register, shelves, etc. No reference is made to business inventory in the attached schedule of collateral. The only clear reference to business inventory in the agreement is contained in a typewritten addendum which is captioned ¶ 2 J of the Section entitled "General Provisions." The provision states:

> Mortgagors will at all times maintain a minimum saleable merchandise inventory in stock of approximately $25,000 during the term of this mortgage.

On October 31, 1979, the Claimant filed a Uniform Commercial Code Financing Statement (UCC–1) with the Clerk of the Circuit Court for Pinellas County and listed as collateral in the UCC–1 "all physical assets located at 6101 54th Avenue North, St. Petersburg, Florida including furniture, fixtures and equipment now owned or hereafter acquired, leasehold and leasehold improvements, inventory, and the right to the name 'Thrifty Hardware'." A UCC–1 was also filed with the Secretary of State.

On September 8, 1981, both William Young d/b/a M & Y Hardware and Gary Alan Martens d/b/a M & Y Hardware filed voluntary petitions under Chapter 13 of the Bankruptcy Code. On February 11, 1982, the Court confirmed the Amended Chapter 13 Plans of both Debtors and authorized a sale of inventory directing that the proceeds of the sale be divided between the estates of each debtor and distributed by the Trustee to creditors. The record reveals that although the sale was held and a check for $6,918.87 paid over to the Trustee, the Debtors failed to provide a proper accounting of the inventory sale. To date the proceeds of the sale have not been distributed by the Trustee pending the receipt of an itemized report of the sale and a determination by this court regarding the validity of Joseph Grande's claim.

The Trustee contends that the claimed security interest in merchandise inventory was never created due to the omission from the list of collateral which was attached to and made a part of the security agreement. The claimant contends, however, that although the inventory was inadvertently omitted from the schedule, the typewritten provision requiring the Debtors to maintain a minimum of $25,000 in inventory creates the implication that the inventory was intended by all parties as collateral for the underlying debt. The claimant urges the court to recognize that there exists within the four corners of the security agreement an ambiguity as to intent, which ambiguity is supported by the inclusion of the inventory in the UCC–1 signed by the Debtors.

Florida Statutes § 679.9–203 in pertinent part provides:

(1) Subject to the provisions of § 674.4–208 . . . and § 679.9–113 . . . a security interest is not enforceable against the debtor or third parties unless

(a) . . . the debtor has signed a security agreement which contains a description of the collateral . . . and;

(b) value has been given.

While the Court is aware that the clear language of the statute requires a writing signed by the debtor, in which the collateral is described, to create a valid security interest and that these bare requirements were statutorily imposed to provide relief from the complex requirements of earlier chattel mortgage acts, the Court is of the opinion that additional factors must be considered in resolving the case at bar.

The Security Agreement is a contract between the parties, which contract, under Florida law, must be reduced to a signed writing containing a description of collateral in order to be enforceable. As noted in the Florida Code Comments following § 679.9–203 Fla.Stat. (1966) "Subsection (1) is essentially a statute of frauds for non-possessory security interests." Further, the UCC–1 or financing statement, required to perfect the security interest, serves primarily to put interested third parties on notice of the existence and extent of a possible security interest.

■ Where, as here, there exists an ambiguity within a contract as to the intent of the parties when entering into that contract, the court may permit extrinsic evidence for the purpose of clarifying the intent of the parties. As stated by the Court of Appeals for the Third District of Florida in *J. & S. Coin Operated Machines, Inc. v. Gottlieb,* 362 So.2d 38 (Fla. 3d DCA 1978) "As a general rule, it is the duty of the court to determine the intention of the parties from the language used, apparent objects to be accomplished, other provisions in the agreement which might shed light in the question and the surrounding circumstances at the time the agreement was entered into."

■ It is the opinion of this Court that the typewritten provision added to the security agreement requiring the debtors to maintain a minimum inventory, creates sufficient ambiguity as to the intent of the parties to support the admission of parol evidence. Although the provision may be interpreted as merely a provision safeguarding the viability of the business, it may also be interpreted as the parties intention to maintain a specified level of collateral.

In light of the foregoing, it is

ORDERED, ADJUDGED AND DE-CREED that a final evidentiary hearing on Trustee's Objection to Claim No. 1 filed by Chris Larimore will be held before the undersigned on March 15, 1983 at 2:45 p.m. in Room 703, 700 Twiggs St., Tampa, Florida. It is further

ORDERED, ADJUDGED AND DE-CREED that the Debtors, William P. Young and Gary Alan Martens, shall provide within 15 days from the date of entry of this order, to the Trustee, Chris C. Larimore, a complete itemized accounting of the inventory sale conducted pursuant to the court's order of February 11, 1982.